ASSOCIATED TRUCK LINES, INC., v. BAER.

1. CONTRACTS—CONSTRUCTION AS A WHOLE.

 A contract must be construed as a whole, all parts harmonized and every word given effect, if possible, and no part eliminated or stricken by some other part unless such a result is fairly inescapable.

2. SAME—CONSTRUCTION—OPTION TO PURCHASE—CONDITIONS.

 Plaintiff optionee-lessee's "first right and option to purchase from the undersigned the premises" after the expiration of the first 2 years of a 15-year lease is construed as giving plaintiff an option to purchase during the last 13 years of the lease that was not conditional upon the optionor's willingness to sell, the word "first" being rejected as surplusage and not making the option conditional.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 12 Am Jur, Contracts § 241.
[2] 12 Am Jur, Contracts § 27; 32 Am Jur, Landlord and Tenant § 299.
[3] 49 Am Jur, Specific Performance § 120.
[3] Mutuality of remedy as essential to granting of specific performance. 22 ALR2d 508, 532.
 Specific performance of a contract as a matter of right. 65 ALR 7, 49.
[5, 6] 14 Am Jur, Covenants, Conditions and Restrictions § 19 et seq.
[6] 55 Am Jur, Vendor and Purchaser § 685 et seq.
[7] 32 Am Jur, Landlord and Tenant § 307.
[8] 49 Am Jur, Specific Performance § 73.
[9] 49 Am Jur, Specific Performance § 139.
[10] 14 Am Jur, Courts § 167; 31 Am Jur, Judgments § 443.

3. SPECIFIC PERFORMANCE—OPTION TO PURCHASE.

Plaintiff optionee-lessee is entitled to specific performance of provision of agreement, separate from 15-year lease but executed as a part of a financing arrangement as to premises occupied by plaintiff, giving plaintiff the "first right and option to purchase from the undersigned the premises," where, from an examination of the entire instrument, it appears the parties intended that the option should become unconditionally effective during the last 13 years of the term of the lease.

4. CONTRACTS—CONSTRUCTION—INTENT GATHERED FROM ENTIRE CONTRACT.

The paramount rule in the construction of contracts is that effect must be given to the intent of the parties gathered from the instrument as a whole.

5. PROPERTY—LESSEE'S OPTION TO PURCHASE—RIGHT RUNNING WITH THE LAND.

Provision of separate agreement, given to lessees under 15-year lease, that lessee should have the "first right and option to purchase" the premises during the last 13 years of the term of the lease created a right running with the land.

6. VENDOR AND PURCHASER—BONA FIDE PURCHASER—FINDING OF COURT—RIGHT RUNNING WITH THE LAND—OPTION.

Trial court's finding that defendants were not bona fide purchasers without notice of option, was not error, where it appears they are children of optionors and optionors transferred to the defendants their interest some 3 weeks after option had been given to plaintiff whose possession of the premises antedated the option, the right created being one running with the land notwithstanding option provided plaintiff might "purchase from the undersigned."

7. SAME—OPTION—TENDER—ADDITIONAL BUILDING COSTS.

Plaintiff optionee's tender of "the option price" under an option to purchase, an agreement separate from lease and executed as part of a financing operation, was not inadequate, where the option fixed the purchase price at $65,000 and cost of substituted, replaced, added or extensions of buildings, but lessor had not made any such capital improvements pursuant to specific provision therefor as to lessor and addition of such as had been made by the lessee was not provided for in the lease.

8. SPECIFIC PERFORMANCE—LACHES—EQUITY—RECORD.

Record *held*, not to support defendants' claims that plaintiff optionee-lessee was guilty of laches in exercising option to pur-

chase and that remedy of specific performance was inequitable under the circumstances.

9. Same—Title—Jurisdiction—Substituted Service of Process.

 A suit for specific performance of a binding agreement to sell real estate, brought into being by plaintiff's exercise of the option and thereupon ripening into an interest in land, sufficiently partakes of the nature of a proceeding *in rem* or *quasi in rem*, as affecting title to real estate, that with respect to such title, the court acquired, by substituted service of process, the jurisdiction necessary to decree (CL 1948, § 622.18; CLS 1954, § 613.46).

10. Courts—States—Judgment—Lands—Title—Constructive Notice.

 A State court has authority to proceed to a final decree respecting the ownership of lands within its limits upon constructive notice to defendants who reside beyond the reach of process (CL 1948, § 622.18; CLS 1954, § 613.46).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted April 6, 1956. (Docket No. 36, Calendar No. 46,767.) Decided June 4, 1956. Rehearing denied September 4, 1956.

Bill by Associated Truck Lines, Inc., a Michigan corporation, against Harold J. Baer and others for specific performance of option agreement to sell real estate. Decree for plaintiff. Defendants appeal. Affirmed.

*Warner, Norcross & Judd (Harold S. Sawyer and Joseph B. White,* of counsel), for plaintiff.

*Mitts, Smith & Haughey,* for defendants.

Dethmers, C. J. Defendants appeal from a decree for specific performance of an agreement which arose upon plaintiff's exercise of an option for purchase of real estate, which option plaintiff says was absolute but defendants contend was conditioned upon optionors' willingness to sell.

In 1941 the real estate was used by plaintiff, a motor freight carrier, as its truck-line terminal, but was owned by a warehouse corporation affiliated with and partly owned by plaintiff. The warehouse corporation was in financial straits, needed financing, and had failed in efforts to negotiate a bank loan. The problem was then met as follows: The warehouse property was sold and conveyed to defendants' parents for $65,000 on December 19, 1941. On that same date they leased the property back to plaintiff for its office, freight terminal and storage purposes, for a term of 15 years, commencing January 1, 1942, at a rental of $117,000, to be paid in 180 monthly instalments of $650 each, the lessors to pay all taxes and insurance. They also gave plaintiff a separate written option agreement, upon which this suit is brought. Its pertinent provisions were that the "undersigned" (optionors) granted plaintiff "first right and option to purchase from the undersigned the premises" for $65,000 at any time during the term of the lease, but not until after January 1, 1944.

Defendants contend that the word "first" in the option is controlling and discloses an intent to make it conditional upon optionors' willingness to sell. In support, they cite authorities for the rules of construction they deem applicable. The general tenor of them is that the word "first" is conclusive of the option's conditional character; that determination of the meaning of the language employed and not speculation as to the parties' motives is the concern of the Court; that the words used in the instrument control, and no intent differing therefrom may be read into it; and that effect and meaning must be given to every word therein, if possible. They insist that holding the option to be absolute involves the deletion therefrom of the word "first". Particularly relied upon by them is *Laevin* v. *St. Vincent de Paul Society of Grand Rapids,* 323 Mich 607 (6

ALR2d 815), and authorities from other jurisdictions cited therein. In that case this Court, quoting from previous Michigan decisions, re-expressed the controlling rule of construction in these words (pp 609, 610):

" ' "It is a cardinal principle of construction that a contract is to be construed as a whole; that all its parts are to be harmonized so far as reasonably possible; that every word in it is to be given effect, if possible; and that no part is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable." ' * * *

" ' "Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." ' "

Involved in that case was a provision in a lease for the "first privilege of re-leasing" at a rental to be agreed upon. There was no other language or provision in the *Laevin* lease or any fact or circumstance inconsistent with the idea that the "first privilege" gave rise to a conditional option only. Hence, applying the rules of construction just quoted, this Court held that it was possible to give effect to the word "first" and that there was no need to reject it because it was not inconsistent with the plain intent of the parties as gathered from the entire lease. The instrument there under consideration permitted of no other conclusion. Distinguishable, in a controlling respect, is the instant case. Here, to give the effect to the word "first" contended for by defendants would be to fly in the face of the provision in the option that plaintiff was not permitted to exercise it during the first 2 years of the term of the lease. To hold the option conditional upon optionors' willingness to sell would render that provision meaningless and without purpose. Why expressly deny

plaintiff the right to exercise the option for 2 years, if, at all events, plaintiff could at no time exercise it unless optionors were willing? What purpose was the 2-year provision designed to serve? Certainly not that of giving optionors a 2-year period during which they might sell to others and thereby terminate all further option rights in plaintiff. Common sense and reason forbid such conclusion, particularly in view of the fact that the entire transaction was a financing measure on the part of plaintiff and its affiliate and not the culmination of a desire to dispose of the property essential to plaintiff's business operations. For what conceivable reason could the parties have intended that plaintiff's right to repurchase during the last 13 of the lease's 15-year term should depend on whether optionors should decide during the first 2 years of that term to exercise a power to defeat such right in plaintiff? It seems plain enough that the purpose of the 2-year provision was to give optionors a return on their investment at the rate of $650 per month for at least 2 years before plaintiff could require them to convey at the same price at which they had purchased. In this manner optionors were guaranteed that the expense and trouble attending the transaction should not go inadequately compensated, as might otherwise result from plaintiff's immediate or early exercise of the option. That 2-year restriction on plaintiff's right is eloquent of the parties' intent that the option was, thereafter, to be absolute and not conditioned on optionors' willingness to sell. To hold otherwise would be to read out of the agreement not just one word, as defendants complain was done by the decree below, but an entire clause. To revert to the language quoted in *Laevin,* the word "first" must be given effect "if possible" and is not to be "stricken by some other part unless such a result is fairly inescapable," and it should not "be rejected as mere

surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." In the instant case, regard for the mentioned 2-year clause makes it impossible to give the word "first" the effect contended for by defendants; if so construed, it must necessarily be considered stricken by the clause because that result is fairly inescapable; and it must then be rejected as surplusage because no reasonable purpose for its use can be discovered from the whole instrument, but, on the contrary, the intent to be gathered from the 4 corners thereof is against the view that it should be permitted to make the option conditional. Previous decisions of this and other States are helpful only as they enunciate general rules of construction but they are scarcely controlling here because none involves anything similar to the 2-year clause here deemed controlling. For a case strongly relied upon by plaintiff, however, see *Tantum* v. *Keller,* 95 NJ Eq 466 (123 A 299). We conclude, respecting this portion of the case, with the observation that, useful as other rules of construction may be, paramount is the one that effect must be given to the intent of the parties gathered from the instrument as a whole. See *In re Hicks' Estate,* 345 Mich 448. From the 4 corners of the instrument at bar we find expressed an intent to create an absolute option. Under the facts of this case plaintiff is entitled to specific performance thereof.

As above indicated, we do not consider that it was the intent of parties that optionors could defeat plaintiff's rights under the option during the first 2 years of the lease. We think it created a right running with the land. See *Brenner* v. *Duncan,* 318 Mich 1. The fact that the option provides that plaintiff may purchase "from the undersigned" we do not deem persuasive of a different result. Plaintiff's possession of the premises at the time optionors con-

veyed the premises to defendants, within 3 weeks after execution of the lease and option, was notice to defendants of plaintiff's rights in the premises, placing a burden of inquiry on them. For that reason and the fact that defendants' agents in the transaction involving the transfer of the premises from their parents to them were persons familiar with the existence of the option and the further fact that defendants were the children of and, except for one of them, living at home with optionors at the time of the execution of all the foregoing instruments, we are impelled to the view that the trial court did not err in finding that defendants were not bona fide purchasers without notice of the option.

Next, defendants contend that plaintiff did not make an adequate tender under the terms of the option. Plaintiff's offer was to pay "the option price." No other figure was specified. We treat defendants' argument in this connection as a contention that the decree below erred in fixing the purchase price to be paid by plaintiff under the option at $65,-000. Defendants' reliance in this connection is placed on language of the option giving the right to purchase for $65,000 "and provided further, if during the life of this option there shall be any substitution, replacement, addition to or extension of the present buildings on the premises under the provisions of the lease   *   *   *   the cost thereof shall be added to and become additional to the purchase price of $65,000." During its tenancy under the lease plaintiff made some $14,000 worth of capital improvements to the premises at its own expense. That sum, defendants contend, should be added to the $65,000 purchase price required to be paid by plaintiff under the option. The option's language "substitution, replacement, addition to or extension of the present buildings on the premises *under the provisions of the*

*lease"* clearly refers to the provision in the 19th paragraph of the lease that:

"Lessor further agrees at any time or times during the first 7 years of this lease, upon the written request of lessee, to provide and advance funds not to exceed the total sum of $20,000 to be used for the purpose of erecting substitutions, replacements, additions to or extensions of the present buildings on said premises."

The option requires plaintiff to pay, in addition to the $65,000, sums expended for the mentioned purposes "under the provisions of the lease." There are no provisions in the lease for expenditures for such purposes by the lessee but only by the lessors. It follows that only expenditures by the lessors are referred to in the option and required thereby to be added to the purchase price.

To defendants' claims of laches and inequities inhering in specific performance, we need only to say that the record does not support them.

Service was obtained by publication on one of the defendants, an owner of an undivided 1/4 interest in the real estate and a resident of the State of Massachusetts. CLS 1954, § 613.46 (Stat Ann 1955 Cum Supp § 27.776) provides for the court's making an order for the appearance of a nonresident defendant and the succeeding section (CL 1948, § 613.47 [Stat Ann § 27.777]) provides for service thereof, either personal or by publication or mailing. CL 1948, § 622.18 (Stat Ann § 27.1448) provides that a copy of any final decree affecting or determining the title to real estate may be recorded and that, if the decree directs the execution of a conveyance, the record of such certified copy shall have the same effect as the record of such conveyance would have, if duly executed pursuant to the decree. The decree here in question provides for such recording of a

copy thereof and that when so recorded it shall stand and operate as the conveyance therein required to be made by defendants to plaintiff. In view of the mentioned statutory provisions, it must be held that this suit for specific performance of a binding agreement to sell real estate, brought into being by plaintiff's exercise of the option (see *Brenner* v. *Duncan, supra; Gipson* v. *Hester,* 310 Mich 378; *LeBaron Homes, Inc.,* v. *Pontiac Housing Fund, Inc.,* 319 Mich 310) and thereupon ripening into an interest in land, sufficiently partakes of the nature of a proceeding *in rem* or *quasi in rem,* as affecting title to real estate, that, with respect to the latter only, the court acquired, by substituted service of process, the jurisdiction necessary to the decree. See 93 ALR 621, supplemented by annotation at 173 ALR 985; *Garfein* v. *McInnis,* 248 NY 261 (162 NE 73); *Light* v. *Doolittle,* 77 Ind App 187 (133 NE 413); *McVoy* v. *Baumann,* 93 NJ Eq 360 (117 A 717); *Bush* v. *Aldrich,* 110 SC 491 (96 SE 922); *Hawkins* v. *Doe,* 60 Or 437 (119 P 754, Ann Cas 1914A, 765); and language in *Stewart* v. *Eaton,* 287 Mich 466, 478 (120 ALR 1354), where this Court said:

"There is no question but that a State, through its courts, may proceed to a final decree respecting the ownership of lands within its limits upon constructive notice to defendants who reside beyond the reach of process."

Affirmed, with costs to plaintiff.

SHARPE, SMITH, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.

The late Justice REID took no part in the decision of this case.