**MICHIGAN NATIONAL BANK, a national banking corporation, Plaintiff,**

v.

**Dr. Neil S. LEVY, D.O., Defendant.**

No. 82 C 3324.

United States District Court, N.D. Illinois, E.D.

June 15, 1983.

Timothy J. McGongele, Ashcraft & Ashcraft, Chicago, Ill., for plaintiff.

Miriam J. Frank, Katten, Muchlin, Zavis, Pearl & Galler, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Michigan National Bank ("Michigan National") brought this action against defendant Dr. Neil S. Levy ("Levy") seeking to recover amounts allegedly owed Michigan National pursuant to an executed loan agreement. Jurisdiction is founded upon 28 U.S.C. § 1332. This matter is presently before the Court on Michigan National's motion for summary judgment in its favor. For the reasons set forth below, the motion will be granted.

### I.

Summary judgment will not be granted unless there are no genuine issues of material fact and the controversy can be resolved as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). The following facts are not in dispute.

1. Michigan National explains, and Levy does not dispute, that the note of November 28, 1980, was executed in order to correct Michigan National's omission of a credit life insurance policy amount in the disclosure on the November 4, 1980, note.

2. The purchase agreement provided in relevant part:
   Purchaser expressly covenants and agrees to make timely payments to Michigan National Bank-Oakland on behalf of Seller and to hold Seller harmless from and against any and all claims, expenses, costs, damages and other liabilities, (including any and all court costs and reasonable attorney's fees), arising out of or resulting from Purchaser's nonpayment of or other default upon said note.

In late 1976 or early 1977, Levy obtained at least two commercial loans from Michigan National. The proceeds of these loans were used by Levy to open and fund a pediatrics practice in Troy, Michigan. On November 4, 1980, Levy executed another loan agreement with Michigan National that in effect converted the outstanding commercial loans into a single installment loan. The November 4, 1980, promissory note was superceded by an almost identical note executed by Levy on November 28, 1980 ("the note").[1] By the note, Levy promised to pay to the order of Michigan National $15,503.18 together with 15.50% interest per annum on the unpaid balance in monthly installments of $436.20 commencing on December 30, 1980. The note further provided that during any period of default, interest on the unpaid balance would be assessed at 17.5%. When signing the November 4, 1980, note, Levy also executed an Affidavit of Business Purpose which provided that the installment loan was to be used for business purposes, specifically the repayment of prior commercial loans. No affidavit was executed when the corrected note was signed on November 28, 1980.

On July 21, 1981, Levy and Dr. Sander Lipman ("Lipman") entered into a purchase agreement that conveyed Levy's pediatrics practice to Lipman. The purchase agreement provided that Lipman would assume responsibility for a debt owed by Levy to Michigan National.[2] Michigan National

\* \* \* \* \* \*

The assumption by Purchaser of a certain promissory note dated (blank) (a copy of which is attached hereto as Exhibit "A"), with Seller as maker in the sum of $25,000 calling for $436.20 in equal monthly installments of principal and interest, at the rate of (blank) percent, payable to Michigan National Bank-Oakland. The principal balance on the date of this Agreement being $15,703.20, which Purchaser agrees to assume and pay.

\* \* \* \* \* \*

This Agreement contains the entire agreement between the parties hereto with respect to the transactions contemplated herein. There shall be no amendments to this Agree-

was not party to the purchase agreement. Lipman did, however, take out a loan from Michigan National to finance his purchase of Levy's practice. Lipman, Levy and their respective counsel were present at Michigan National for the closing on Lipman's loan on July 21, 1981. At that time, Lipman, Levy and Michigan National executed an agreement that provided, *inter alia:*

> Neil S. Levy, Sander E. Lipman, and Michigan National Bank-Oakland agree that an existing loan made 11/28/80 by Michigan National Bank-Oakland to Neil S. Levy and calling for monthly payments of $436.20 *remains solely the responsibility and obligation of Neil S. Levy.*
>
> This understanding supercedes any language to the contrary in the Purchase Agreement or any other document executed by Sander E. Lipman (and/or Randee S. Lipman), and Neil S. Levy.

(Emphasis added).

Lipman made payments on the loan for several months. As of March 19, 1982, however, installment payments were not received, and the loan fell into default. Michigan National seeks judgment against Levy in the amount of $11,712.81, plus interest.[3]

## II.

■ In his defense, Levy asserts that: (1) the promissory note is unenforceable because the interest rate charged was usurious, and (2) Levy's delegation of the loan to Lipman relieved Levy of duties thereunder. Given the uncontested facts as set forth above, neither defense is sufficient under Michigan law[4] to defeat Michigan National's claim.

### A. Usury Defense

■ Michigan Compiled Laws § 438.61 provides in relevant part:

> ... it is lawful in connection with any extension of credit to any business entity by any state or national chartered bank or insurance carrier for the parties to agree in writing to any rate of interest. For the purposes of this act "business entity" means (1.) any corporation, trust, estate, partnership, cooperative or association, or (2.) any natural person who furnishes to the extender of the credit a sworn statement in writing specifying the type of business and business purpose for which the proceeds of the loan will be used, but the exemption provided by this act does not apply if the extender of credit has notice that the person signing the sworn statement was not engaged in the business indicated.

Levy contends that the rate charged was usurious because Michigan National did not comply with the requirements of § 438.61, and the rate charged was higher than the statutory limit for loans not exempted by Mich.Comp.Laws § 438.61. Without offering any supporting authority, Levy asserts that repayment of prior commercial loans is not a business purpose contemplated by § 438.61, and that even if it is a proper business purpose, the affidavit of November 4, 1980, cannot be said to apply to the note of November 28, 1980.

There is no question that the loans taken by Levy in 1977 and consolidated for repayment in 1980 were used to finance Levy's pediatrics practice. There is no question that Levy was engaged in the practice of pediatrics when the November 28, 1980,

---

ment unless mutually agreed upon by the parties in writing.

The papers submitted by Levy do not explain the discrepancy between the amount Levy owed Michigan National under the November 28, 1980, note and the amount of debt allegedly assumed by Lipman under the purchase agreement. Because we conclude that the purchase agreement does not relieve Levy of his obligation to Michigan National, *see* discussion *infra,* this discrepancy is not a material issue of fact precluding summary judgment.

**3.** The amount of damages is not contested. Therefore, our ruling in favor of plaintiff on the issue of liability is also dispositive of damages.

**4.** The parties do not dispute that Michigan law applies. A federal court sitting in diversity is required to apply substantive state law. *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because the promissory note was executed in Michigan, we look to Michigan law to resolve the controversy.

note was signed. Furthermore, it is clear that although several days passed between the signing of the affidavit of business purpose and the signing of the corrected note, the affidavit was intended to apply to the transaction represented by the November 28, 1980, note. Thus, Levy's usury defense is, at best, technical. In *Federal Deposit Insurance Corporation v. Leach,* 525 F.Supp. 1379 (E.D.Mich.1981), the court rejected a similarly technical objection in holding that § 438.61 applied despite the absence of a sworn statement of business purpose. The Court stated:

> [T]his ruling does no violence to the public policy of the State of Michigan, which the plain statutory language quoted above indicates is intended to protect the personal consumer borrower from usurious rates, while permitting the business borrower to exercise his business judgment in such matters. Although there is no sworn writing in the bank's records of the business purpose of this loan the sworn deposition testimony of Leach and Bartneck has undisputedly confirmed such a purpose.

Although the fact that the FDIC was plaintiff arguably compelled the court's holding in *Leach, see D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), we conclude that the court's reasoning as quoted above is equally applicable to the case at bar. The fact that the promissory note was in effect a consolidation of earlier commercial loans does not negate the business purpose underlying the transactions, and the disparate dates on the affidavit and the promissory note reflect no more than the correction of an error irrelevant to § 438.61. We therefore reject Levy's usury defense.

**B. Lipman Defense**

Levy's second defense is that the purchase agreement between himself and Lipman relieved him of liability to Michigan National on the November 28, 1980, promissory note. He acknowledges that the language of the agreement executed on July 21, 1981, by himself, Lipman and Michigan National directly contradicts this contention, and he further acknowledges that he executed the agreement with the advice of counsel. Nonetheless, Levy protests that he believed himself to be protected from liability due to the purchase agreement and informal assurances by Lipman that he would assume the installment payments on the promissory note.[5]

The agreement executed by Levy, Lipman and Michigan National unambiguously provides that Levy was to remain responsible for payments on the November 28, 1980, promissory note despite any provisions to the contrary in the purchase agreement. Whether Levy has a cause of action against Lipman under the purchase agreement is beyond the ambit of the controversy at hand. Under Michigan law, where a contract is clear and unambiguous, "the language must be held to express the intention of the parties, and the court need not search for meanings nor indulge in inferences as to the intention of the parties." *DeVries v. Brydges,* 57 Mich.App. 36, 225 N.W.2d 195, 198 (1974). *See also Associated Truck Lines v. Baer,* 346 Mich. 106, 77 N.W.2d 384 (1956). The alleged assurances informally made by Lipman to Levy and Levy's alleged confusion about his liability do not inject ambiguity into the clearly worded agreement by Levy to remain responsible for the note's payment.[6] We therefore re-

**5.** Levy asserts that the purchase agreement gives rise to several defenses, *i.e.,* novation, release and estoppel, but offers no legal precedent or facts beyond those described herein to support any of these theories. In the absence of support for any of these specific contractual defenses, we conclude that the clear language of the July 21, 1981, agreement controls this controversy, *see* discussion *infra,* and we will address only the general question of the effect of Lipman's purported assumption of the November 28, 1980, promissory note.

**6.** Levy weakly suggests that the July 21, 1981, agreement executed by himself, Lipman and Michigan National "might" be unenforceable against him due to lack of consideration. On the contrary, the July 21, 1981, agreement made possible the purchase of Levy's practice by Lipman and resulted in, *inter alia,* a cash payment to Levy.

ject Levy's defense of delegation to Lipman.

For these reasons, summary judgment is granted in favor of plaintiff in the amount of $11,712.81 plus interest at 17.5%. It is so ordered.