Raymond WORKMON, Plaintiff–
Appellant,

v.

PUBLISHERS CLEARING HOUSE,
Defendant–Appellee.

No. 95–2146.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 24, 1996.

Decided Jan. 6, 1997.*

Martin S. Baum (argued and briefed),
Bloomfield Hills, MI, for Plaintiff–Appellant.

Robert W. Powell (briefed), Daniel D.
Quick, Dickinson, Wright, Moon, Van Dusen
& Freeman, Detroit, MI, Edward H. Pappas
(argued), Dickinson, Wright, Moon, Van Du-
sen & Freeman, Bloomfield Hills, MI, for
Defendant–Appellee.

Before: MARTIN, Chief Judge, CONTIE,
Circuit Judge, CARR, District Judge.**

## OPINION

CARR, District Judge.

This is a breach of contract case in which
Raymond Workmon (Workmon) appeals a

---

* This decision was originally issued as an "unpub-
lished decision" filed on January 6, 1997. On
June 25, 1997, the court designated the opinion
as one recommended for full-text publication.

** The Honorable James G. Carr, United States
District Judge for the Northern District of Ohio,
sitting by designation.

grant of summary judgment in favor of Publishers Clearing House (PCH) and denial of Mr. Workmon's motion to amend his complaint. (Woods, J.)(J.A. at 4,15). For the following reasons, we affirm the district court's decision.

### Background

Mr. Workmon received a mailing from PCH designed to solicit magazine subscriptions. The front of the envelope noted "ACT NOW FOR ANOTHER CHANCE TO WIN TEN MILLION DOLLARS." (J.A. at 99). The back of the envelope read: "You may already hold the winning number that will make you rich for life." (J.A. at 100). Workmon opened the envelope and the upper left of the certificate read:

Personal I.D. No.

09   0067 9696 U

has been reserved exclusively for

RAYMOND J. WORKMON

If said number is returned by

January 6, 1989

RAYMOND J. WORKMON

wins our

**TEN MILLION DOLLAR**

**SUPERPRIZE**

(J.A. at 103)(emphasis in original). Upon seeing this notice, Mr. Workmon concluded that he had won $10 million.

Directly below the bold print, the certificate also: (1) told Workmon that he could enter the ten million dollar sweepstakes, extend his current Time magazine subscription, and receive a free 35 MM camera; (2) listed subscription renewals with prices; (3) specified payment options; and (4) pointed out that he could enter the sweepstakes without renewing his subscription. (J.A. at 103).

The back of the certificate explained:

Here's how you can win

**TEN MILLION DOLLARS**

The unique Personal Superprize number assigned to you in this bulletin has been registered in your name alone. *If you return your entry by the deadline and your entry matches the preselected winning number* for SuperPrize IX, you will win $10 million. If we do not receive a timely entry with the matching preselected number, Publishers Clearing House will award the basic amount of $1 million in a special drawing . . .

(J.A. 104,)(emphasis added). Plaintiff admitted that he generally reviewed the back of the certificate before returning the entry certificate. (J.A. at 175).

Workmon returned his entry form and number to PCH. Workmon also renewed his subscription to Time magazine (he alleges that he would not have renewed his subscription if not for his belief that he won the sweepstakes). After receiving confirmation of his renewal, Workmon contacted PCH to inquire about the $10 million prize. PCH told him that he had not won.

Mr. Workmon, apparently, sincerely believes that he won the "superprize" and that PCH owes him ten million dollars. Mr. Workmon contacted public officials (including his Congressman) and finally filed suit for breach of contract in a Michigan state court. PCH removed the case to federal court. Mr. Workmon then moved to amend his complaint to add a claim under the Michigan Consumer Protection Act. Mich. Comp. Laws. § 445.901 *et. seq.* Before the court ruled on that motion, PCH filed a motion for summary judgment, and the Magistrate Judge held the motion to amend in abeyance pending a determination on the motion for summary judgment. The district court granted summary judgment and denied the motion to amend.

Applying Michigan contract law, the district court held that the certificate and mailing must be construed as a whole. (J.A. at 9). When so construed, a disclaimer limits recipients of the prize to those who return an identification number that matches the winning number. The district court found no

merit in plaintiff's MCPA claim because MCPA and Michigan case law provide no remedy for a trade practice that is confusing only to an unreasonable person. (J.A. at 17). We affirm.

■■■ Under Michigan contract law, an entrant in a giveaway contest must, "[i]n order to establish an enforceable contract, ... show (1) the offer of a prize by the sponsor for the performance of a specified act, (2) competition in the contest, and (3) the performance of the specified act required for winning the contest." *Bellows v. Delaware McDonald's Corp.*, 206 Mich.App. 555, 558, 522 N.W.2d 707 (Mich.Ct.App.1994). The offer (which includes the conditions and rules of the contest) limits the contract. *Id.* at 558, 522 N.W.2d 707. Furthermore, contracts must be construed as a whole: if reasonably possible, all parts and every word should be considered; no part should be eliminated or stricken by another part unless absolutely necessary. *Associated Truck Lines, Inc. v. Baer*, 346 Mich. 106, 110, 77 N.W.2d 384 (Mich.1956)(*citing Laevin v. St. Vincent De Paul Society of Grand Rapids*, 323 Mich. 607, 609, 36 N.W.2d 163 (1949)).

The Michigan Court of Appeals addressed a more difficult case in *Coleman v. Bureau of State Lottery*, 77 Mich.App. 349, 258 N.W.2d 84 (1977). In *Coleman*, the court decided that a lottery contestant, who had erroneously been told that he had won a state lottery, was not entitled to the prize. The lottery's rules prescribed conditions for determining the winner. The court held that even though the rules were not written on the ticket, the rules were binding on the plaintiff. In this case, PCH stated the rules of the sweepstakes. If Workmon read the entire certificate, he would have known (or reasonably should have known) that he was not automatically the winner.

PCH's mailing did not create a valid contract; it was, rather, an offer to participate in the sweepstakes. Plaintiff sought to ignore the conditional language in the material he received, including the language on the entry certificate, on the envelope, and in the expiration notice. These constitute sufficient disclaimers: no reasonable person in Mr.

Workmon's position would assume that he had won the prize.

At oral argument, Workmon's counsel argued that the two sentences about being the winner applied specifically to Workmon while the rules, the rest of the certificate, and the envelope were of general application. In his opinion, therefore, the court should conclude that the two sentences were binding on PCH. However, no reasonable fact finder could conclude that everything else in the mailing should be disregarded. Workmon's mailing was under the general rules of the sweepstakes; therefore, the writing of general application with its disclaimers effectively clarifies any misunderstanding.

■■ The district court correctly held that to allow the motion to amend to include a complaint under the MCPA would be futile. The MCPA should only protect reasonable expectations: a contrary result would open the door to any potential plaintiff no matter how unreasonable his or her belief. The PCH sweepstakes merely offered the opportunity to enter a contest in which Workmon could have won $10,000,000. Although Workmon believed he had won, his belief was not reasonable, and the MCPA does not apply.

### Conclusion

Because there is no genuine issue of material fact and PCH is entitled to judgment as a matter of law, the district court's summary judgment and subsequent dismissal of both the breach of contract claim and the MCPA motion are hereby **AFFIRMED**.