NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0826n.06

Case No. 15-1532

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 18, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DONNA SOLTIS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| J.C. PENNEY CORP., INC., | ) | |
| | ) | **OPINION** |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: SILER, MOORE, and GIBBONS; Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** After working for J.C. Penney for several years, Donna Soltis was terminated from her position. Thereafter, she filed against J.C. Penney a worker's compensation claim, as well as the instant claim for violations of the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, and Michigan's Elliott-Larsen Civil Rights Act. After the worker's compensation claim was settled, J.C. Penney moved for summary judgment on the remaining claims, arguing they were released by the terms of the settlement. The district court granted that motion, and Soltis appealed. We conclude Soltis knowingly and voluntarily signed the Release, which unambiguously released J.C. Penney from liability for all of the instant claims, and affirm.

I.

Donna Soltis (Soltis) began working for J.C. Penney Corporation, Inc. (J.C. Penney) in 2004 and was eventually promoted to the position of Department Supervisor. She was fired in April 2012, approximately six months after Brian Aspey (Aspey), Soltis's supervisor, began

working for J.C. Penney. At some point,[1] Soltis brought a worker's compensation claim against

J.C. Penney, which was later settled. As part of that settlement Soltis signed a release (the

Release), which provides in relevant part:

> I, **Donna L. Soltis**, have filed a claim under the Michigan Workers' Disability Compensation Act for injuries I allege to have resulted from my employment; and, **JC Penney Company, Inc.**, has denied any liability beyond any benefits paid but has consented to a redemption agreement providing me, **Donna L. Soltis**, with consideration in the amount of $**10,000.00**.

> I, **Donna L. Soltis**, in consideration of the full and final settlement of my claims through workers' disability compensation proceedings do hereby:

> . . . .

> 2. Voluntarily agree . . . to forever release and discharge [J.C. Penney] . . . from any and all claims, grievances, arbitrations, demands, causes of action, losses, and expenses of every nature whatsoever known or unknown, arising out of or in connection with my employment by [J.C. Penney], or termination thereof, including, but not limited to, . . . the Age Discrimination in Employment Act of 1967 [(ADEA)] . . . [and] Title VII of the Civil Rights Act of 1964 [(Title VII)] . . . .

Release 1, ECF No. 56-19. The Release further provided Soltis twenty-one days to review the

Release and, with respect to the ADEA claim, seven days after signing to revoke her agreement.

Notwithstanding the Release, Soltis brought suit against J.C. Penney and Aspey, alleging

violations of the ADEA, Title VII, and Michigan's Elliott-Larsen Civil Rights Act. The district

court granted summary judgment in favor of J.C. Penney and Aspey. Regarding her state law

claim, it held that the Release signed by Soltis unambiguously "release[d] all claims related to

her employment with J.C. Penney and her termination," and that the fact that the "magistrate

judge indicated that he did not need the Release" did not affect its validity. *Soltis v. J.C. Penney

Corp.*, No. 2:13-CV-323, 2015 WL 1737057, at \*2 (W.D. Mich. Apr. 16, 2015). Then, turning

---

[1] The parties dispute when the worker's compensation claim was filed. Soltis argues she filed it while the instant claims were pending, but J.C. Penney insists the worker's compensation suit was filed first. However, for the reasons articulated below, the broad unambiguous language of the Release precludes Soltis from bringing the instant suit, so the timing of the claims is irrelevant.

to federal law for Soltis's Title VII and ADEA claims, the district court determined that the balancing test articulated by *Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003), weighed strongly in favor of validating the Release.

## II.

We review a district court's grant of summary judgment *de novo*. *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 528 (6th Cir. 2014). A motion for summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the court must inquire into "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)). The court must "view the evidence and draw all reasonable inferences in favor of the non-moving party." *Scheick*, 766 F.3d at 529 (quoting *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013)). We will apply Michigan law to Soltis's state law claims. *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 823 (6th Cir. 2002) ("A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state . . . ."). But "[f]ederal common law controls the validity of a release of a federal cause of action," so we will apply federal law to her ADEA and Title VII claims. *See Nicklin*, 352 F.3d at 1080 (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir. 1989)).

## III.

### A.

On appeal, Soltis argues that the "conflict[ing]" language in the Release that she "will resign her employment" and release "claims pertaining to her termination of employment"

creates an ambiguity because at the time she signed the Release, she had already been terminated. R. at 14, Appellant Br. 22. Therefore, she argues, the court can look to extrinsic evidence of the parties' intent. She does not argue that the Release is not broad enough to encompass the instant claim, but rather asserts that she and her lawyer did not intend to release it. Soltis maintains that the fact that there was no mention of the present case in the redemption agreement or the Release supports this intent.

In the course of settlement of a worker's compensation claim, parties may agree to a release for ancillary claims. *See Beardslee v. Mich. Claim Servs., Inc.*, 302 N.W.2d 896, 901 (Mich. Ct. App. 1981). Basic principles of contract law apply to interpreting such releases. *Radu v. Herndon & Herndon Investigations, Inc.*, 838 N.W.2d 720, 726 (Mich. Ct. App. 2013). One such principle is that all contracts must be construed as a whole. *Workmon v. Publishers Clearing House*, 118 F.3d 457, 459 (6th Cir. 1997) (citing *Associated Truck Lines, Inc. v. Baer*, 77 N.W.2d 384 (Mich. 1956)). Moreover, the "cardinal rule" in contract interpretation is to ascertain the parties' intent. *Omnicom Grp., Inc. v. 880 W. Long Lakes Assocs.*, 504 F. App'x 487, 490 (6th Cir. 2012) (quoting *McIntosh v. Groomes*, 198 N.W. 954, 955 (Mich. 1924)). In an unambiguous contract, intent is established solely based on the plain language of the contract because in such a case, "no outside evidence can better evince the intent of the parties than the writing itself." *Id.* (citation omitted); *see Cole v. Ladbroke Racing Mich., Inc.*, 614 N.W.2d 169, 176 (Mich. Ct. App. 2000). If, on the other hand, the language of a contract is "reasonably susceptible to more than one interpretation," it is ambiguous, *Cole*, 614 N.W.2d at 176, which allows the court to look to extrinsic evidence to determine the parties' intent. *Shay v. Aldrich*, 790 N.W.2d 629, 641 (Mich. 2010). The party challenging the release must prove that it should

be set aside by a preponderance of the evidence. *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 632 (6th Cir. 2006).

Neither in her complaint nor in her response to J.C. Penney's motion for summary judgment did Soltis argue the Release was ambiguous. We have held that a party who fails to present an issue before the district court waives the right to have it addressed on appeal. *Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006) (citing *Legg v. Chopra*, 286 F.3d 286, 294 (6th Cir. 2002)). Thus, the argument is waived.

In any event, the Release at issue is unambiguous. It releases J.C. Penney "from *any and all* claims, . . . demands, [and] causes of action . . . of *every nature whatsoever known or unknown*, arising out of or in connection with [Soltis's] employment . . . including, but not limited to, . . . [the ADEA] . . . [and] Title VII." Release 1 (emphasis added). The plain terms expressly release J.C. Penney from Soltis's ADEA and Title VII claims, and the broad language encompasses her state law claim, a claim "known" by both parties at the time the Release was signed, and which her complaint makes clear arises out of her employment with J.C. Penney. Because of this expansive language, it is irrelevant that the Release does not expressly mention the instant suit was pending at the time it was signed.[2] *See Morris v. City of Detroit Water & Sewage Dep't*, 20 F. App'x 466, 467–68 (6th Cir. 2001) (finding frivolous a plaintiff's argument that a release that "fully releases . . . any and all . . . causes of action, including . . . any tort action, civil rights, handicapped claims, [and] wrongful discharge claims" did not release plaintiff's claim under the Americans with Disabilities Act because it did not specifically reference that claim); *see also Cole*, 614 N.W.2d at 176 (citation omitted) ("[T]here is no broader classification than the word 'all.'"). Moreover, we have noted that language releasing a

---

[2] The fact that two phrases in the Release could conceivably be read to imply that Soltis was still employed is also irrelevant.

defendant "from any and all claims, demands and causes of action I have or may claim to have arising from or relating in any way to my employment or separation of employment," bars claims based on termination of one's employment. *See Kellogg Co.*, 471 F.3d at 632–34. Because the Release is unambiguous, we will not look outside the writing for evidence of the parties' intent. That her attorney advised her that the instant claims were not barred by the Release is unfortunate, but not grounds for setting it aside. *See Rowady v. K Mart Corp.*, 428 N.W.2d 22, 26 (Mich. Ct. App. 1988) (citing *Gardner v. Johnson*, 210 N.W. 295, 295 (Mich. 1926)) ("[A] person cannot avoid a written contract on the ground that he . . . supposed it was different in its terms . . . .").

B.

Soltis further asserts there was no consideration for the Release, which makes it unenforceable. She argues that the language of the redemption agreement, along with the language in the Release stating "total settlement of $10,000.00 for future medical" supports the contention that the $10,000 was only for settlement of the worker's compensation claim, and thus there was "no additional amount above and beyond the payment related to her injury." R. at 14, Appellant Br. 20–21.

For there to be consideration, there must be a bargained-for exchange, meaning a benefit conferred on one side, and a detriment suffered on the other. *Gen. Motors Corp. v. Dep't of Treasury*, 644 N.W.2d 734, 738 (Mich. 2002). Settlement of a disputed claim may constitute consideration. *McElmurry v. Nine*, 279 N.W.2d 301, 302 (Mich. Ct. App. 1979). Consistent with the principle that contracts should be construed as a whole, *see Workmon*, 118 F.3d at 459, even if there is no specific recitation of consideration in the release itself, if the promises in the larger agreement are supported by consideration, so is the release. *Rowady*, 428 N.W.2d at 25

("[A]ll consideration paid by defendant in exchange for plaintiff's multiple promises must be viewed as consideration as to each promise . . . ."); *see also Beardslee*, 302 N.W.2d at 900–01 ("We conclude that part of the $25,000 paid to the plaintiff, although not specifically identified or severable, was sufficient legal consideration to liquidate the plaintiffs' potential court claim.").

Although the redemption agreement does not state that the $10,000 settlement amount is also consideration for the Release, the Release clearly does, stating that "in consideration of the full and final settlement of [Soltis's] claims through workers' disability compensation," Soltis releases J.C. Penney from the previously discussed claims. Release 1. Contracts must be construed as a whole, so, contrary to Soltis's suggestion, the redemption agreement and a single phrase from the Release cannot be read in isolation from the remainder of the agreement, which states that the $10,000 is also consideration for the Release. If under Michigan law, a release will be upheld even without a specific recitation of consideration in the release, *Rowady*, 428 N.W.2d at 25, surely a release that specifically recites consideration, as the one here, must be upheld.

IV.

Soltis argues the release of her federal claims was not knowing or voluntary because she did not have prior experience in signing releases but relied on her lawyer who agreed the Release would not affect this lawsuit. J.C. Penney asserts the Release was knowing and voluntary because Soltis completed high school and some college, had supervisory experience, was represented by and had "conferred extensively" with counsel, and had time to consider the Release. R. at 16, Appellee Br. 23.

Ordinary contract principles govern the validity of a release of federal law claims. *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995). We must construe a release as a whole, giving effect to every part. *See Harris v. Lockheed Aircraft Corp.*, 572 F.2d 138, 141 (6th Cir. 1978). This circuit has adopted a "totality of the circumstances" test to determine whether an employee knowingly and voluntarily waived her right to bring a suit. We consider:

> (1) [the] plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; [and] (5) the totality of the circumstances.

*Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007) (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc)). We have found a waiver to be knowing and intelligent where an employee took post-graduate courses, was a managerial employee, had twenty-one days to review the agreement and seven days thereafter to change her mind, and consulted a divorce attorney before signing the agreement. *Gascho v. Scheurer Hosp.*, 400 F. App'x 978, 981–85 (6th Cir. 2010). However, we have found a waiver not to be knowing and voluntary where the employees were educated and did not indicate they did not understand the waiver, but were not informed of their right to revoke the waiver and were not given documentation about the procedures to be used in place of judicial proceedings until after they began their employment. *Alonso v. Huron Valley Ambulance, Inc.*, 375 F. App'x 487, 493–94 (6th Cir. 2010).

Soltis's situation is analogous to that of the plaintiff in *Gascho* and, as in that case, the factors here weigh in favor of finding that Soltis knowingly and voluntarily waived her right to bring this suit.

Regarding the first factor, Soltis only argues that she has not previously dealt with signing releases but cites no authority to support that such experience is required under our

precedent. The nature of this litigation has not necessitated an in-depth inquiry into Soltis's background, but we do know that she held a managerial possession for a period of time, and Soltis has not alerted us to anything in her background that suggests she could not understand the basic terms of a contract. Indeed, Soltis's brief notes the praises given to her in her work capacity.

Next, the Release gave her twenty-one days to consider it and seven days after signing to revoke the ADEA portion. *Gascho* found a similar amount of time to consider the agreement—twenty-one days to consider and seven days to revoke—was ample. 400 F. App'x at 982. Moreover, Soltis concedes she consulted with counsel. That her reliance on counsel's advice was to her detriment does not result in the factor weighing in her favor.

For the third factor, as discussed, the Release is unambiguous. Though Soltis asserts she "is not a lawyer," R. at 14, Appellant Br. 19, she "does not need a law degree to grasp the import of these terms." *Gascho*, 400 F. App'x at 982 (discussing language releasing defendant "from any and all claims of any nature . . . based on any fact, circumstance or event occurring or existing at or before [plaintiff's] execution of this Agreement").

Fourth, as discussed, when construing the agreement as a whole, giving effect to every part, *see Harris*, 572 F.2d at 141, it is evident that consideration was given for this Release.

Finally, considering the totality of the circumstances, the fact that Soltis obtained erroneous advice from her attorney may weigh slightly in her favor, but this fact alone is insufficient to tip the balance of the scales that weigh so strongly against her. Thus, we conclude Soltis knowingly and voluntarily signed the Release.

V.

For these reasons, we affirm the district court's grant of J.C. Penney's motion for summary judgment.