NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0113n.06

No. 25-1681

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| NAKISHA WEST, | ) | **FILED** |
| Plaintiff - Appellant, | ) | Mar 10, 2026 |
| | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DOW CHEMICAL COMPANY, | ) | COURT FOR THE EASTERN |
| Defendant, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| ROHM AND HAAS CHEMICAL LLC, | ) | OPINION |
| Defendant - Appellee. | ) | |
| | ) | |

Before: COLE, CLAY, and MURPHY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Nakisha West appeals the district court's grant of summary judgment to her former employer, Defendant Rohm and Haas Chemical, LLC, based on the finding that a signed release agreement bars her claims of racial discrimination, gender discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981 and the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* For the reasons set forth below, we **AFFIRM** the district court's judgment.

## I.  BACKGROUND

### A.  Factual History

In November 2018, Plaintiff Nakisha West began her employment at Defendant Rohm and Haas Chemical, LLC, a subsidiary of Dow Chemical Company.[1]  In March 2023, Defendant notified Plaintiff that she would be laid off on June 30, 2023 along with other employees.[2]  On March 23, 2023, Plaintiff received an email from human resources indicating that she would receive documents relating to her layoff approximately three weeks before her date of separation. The email included a letter stating: "You will receive your . . . Termination General Release (the 'Release') with the final calculation of severance benefits prior to your separation date. You will have a review period to consider whether or not to accept the terms of that Release."  R. 23-1, Page ID #224.

On June 1, 2023, human resources emailed Plaintiff her severance documents, including a "Termination General Release."  R. 24-1, Page ID #257.  The email stated that the Termination General Release "cannot be signed and returned until your actual date of separation or after. This must be signed and returned (if you agree to the terms and conditions) in order to facilitate the severance payments and other transitional benefits."  *Id.*  The email also stated, "Please take some time to digest the attached information and connect with Human Resources for questions you may have."  *Id.*  Plaintiff attests that she did not receive "any paperwork . . . for the layoff" until "the end of June 2023."  West Decl., R. 25-1, Page ID #276.

---

[1] Plaintiff initially named both Rohm and Haas Chemical, LLC and Dow Chemical Company as defendants in this case, but Dow Chemical Company has since been terminated as a defendant.

[2] Although Plaintiff alleges in her amended complaint that she received the notification of her layoff in April 2023, the email sent by human resources to Plaintiff regarding her layoff is dated March 23, 2023.

In a meeting on June 30, 2023, Defendant officially terminated Plaintiff's employment and presented the Termination General Release to Plaintiff. The Termination General Release provides in pertinent part, as follows: "In consideration for the transition assistance benefits described above, Employee releases and discharges the Company from all claims . . . arising out of, or in any way relating to, Employee's employment or termination of Employee's employment with the Company" including "claims arising under any [] federal, state or local laws" and "constitutional provision or public policy prohibiting employment discrimination." R. 17-2, Page ID #135. The release states that Plaintiff has forty-five days to consider the document and agree to the release, and then if Plaintiff accepts, Plaintiff has another seven days to revoke her acceptance of the release. The release also states that by signing the agreement, Plaintiff "has carefully read and reviewed this Release," "fully understands all of its terms and conditions," and "fully understands that the Release is legally binding and that by signing it, [she] is giving up certain rights." *Id.* at 139. Defendant did not state in the meeting that Plaintiff would release legal claims against Defendant by signing the agreement. Plaintiff attests that she "felt pressured to sign and return the document before the end of the day." West Decl., R. 25-1, Page ID #276. The executed release indicates that Plaintiff signed the document on July 1, 2023, although a different colored pen subsequently wrote "13th" over the "1." *See* R. 17-2, Page ID #140.

## B. Procedural History

On February 12, 2025, Plaintiff filed an amended complaint in the district court against Defendant, bringing claims of racial discrimination, gender discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981 and the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq*. Defendant then filed a motion for summary judgment, arguing that the signed release bars Plaintiff's claims. The district court granted summary judgment to Defendant

and dismissed all of Plaintiff's claims, finding that Plaintiff "released her claims against Defendant when she signed the release." Order, R. 29, Page ID #288-89. This appeal followed, wherein Plaintiff challenges the district court's grant of summary judgment to Defendant.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment *de novo*. *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). "In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the nonmoving party." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B. Validity of the Release

The parties do not contest the terms of the release or that the release covers Plaintiff's claims.[3] Rather, Plaintiff argues that her execution of the release was not knowing and voluntary, so the release is not valid and does not bar her claims against Defendant.

Federal law controls the validity of a release of federal claims, and Michigan law controls the validity of a release of Michigan claims. *Soltis v. J.C. Penney Corp.*, 635 F. App'x 245, 247 (6th Cir. 2015). Under federal law, a release of claims is valid if "knowingly and voluntarily" signed. *Hank v. Great Lakes Constr. Co.*, 790 F. App'x 690, 699 (6th Cir. 2019). Under Michigan

---

[3] In her appellate brief, Plaintiff questions, "Is the agreement valid and, if so, what are the terms?" and mentions in passing that Defendant's failure to explain the terms before signing led "to confusion about the terms of the agreement." Appellant's Br. at 14. Besides this brief commentary, however, Plaintiff does not develop any argument about the terms in the agreement or point to any term that is subject to dispute. Therefore, Plaintiff does not meaningfully contest any term in the agreement.

law, a release "is valid if it is fairly and knowingly made." *Xu v. Gay*, 668 N.W.2d 166, 171 (Mich. Ct. App. 2003) (quoting *Wyrembelski v. St. Clair Shores*, 553 N.W.2d 651, 652 (Mich. Ct. App. 1996)). The parties do not attempt to identify any material difference in the standards for the validity of a release under federal and Michigan law as it relates to Plaintiff's claims, nor do we find one. We thus consider the validity of the release of Plaintiff's federal and Michigan claims together.

To determine whether Plaintiff knowingly and voluntarily signed the release, we consider five factors: (1) Plaintiff's "experience, background, and education; (2) the amount of time [that Plaintiff] had to consider the release, including whether [she] had the opportunity to consult with a lawyer; (3) the clarity of the release; (4) the consideration for the release; and (5) the totality of the circumstances." *Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003). "When a release is challenged, the party seeking to avoid the release must prove by a preponderance of the evidence that the release should be set aside." *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 632 (6th Cir. 2006) (quoting *Binard v. Carrington*, 414 N.W.2d 900, 902 (1987)).

As to the first factor, Plaintiff holds a masters degree and has been employed for several years. Plaintiff thus has sufficient experience, background, and education to comprehend the meaning and effect of the agreement. Plaintiff offers no argument or evidence to the contrary. *See Soltis*, 635 F. App'x at 250 ("[The plaintiff] has not alerted us to anything in her background that suggests she could not understand the basic terms of a contract."). As such, the first factor weighs in favor of a knowing and voluntary release.

As to the second factor, the release expressly advised Plaintiff "to consult with an attorney prior to signing this Release" and provided Plaintiff with "forty-five (45) days to consider whether to sign this Release," in addition to "seven days from the date of the signing of this Release to

revoke this Release." R. 17-2, Page ID #138. Plaintiff does not contest these terms. Nor does Plaintiff provide any argument or evidence that Defendant took any action to contradict these terms. We have previously held that twenty-one days to review an agreement and seven days to revoke a signature allowed an employee "ample opportunity to consider the agreement and spared her the risk of not having enough time to consider the pros and cons of signing it." *Gascho v. Scheurer Hosp.*, 400 F. App'x 978, 982 (6th Cir. 2010) (collecting cases). The mere fact that Plaintiff did not take advantage of the forty-five-day window before signing or the seven-day window after signing does not render the amount of time insufficient. *See Hank*, 790 F. App'x at 700 (finding the second factor favors a knowing and voluntary release where "the plaintiff simply does not request more time to either review the waiver or consult an attorney"). Plaintiff thus had sufficient time to consider the release and consult with an attorney, and the second factor weighs in favor of a knowing and voluntary release.

As to the third factor, Plaintiff does not identify any term in the release that lacks clarity. Rather, the release unambiguously provides that by signing the agreement, Plaintiff "releases and discharges the Company from all claims . . . arising out of, or in any way relating to, [her] employment or termination of [her] employment with the Company," including "claims arising under any [] federal, state or local laws" and "constitutional provision or public policy prohibiting employment discrimination." R. 17-2, Page ID #135. The release also states that by signing the agreement, Plaintiff "has carefully read and reviewed this Release," "fully understands all of its terms and conditions," and "fully understands that the Release is legally binding and that by signing it, [she] is giving up certain rights." *Id.* at 139. These terms "leave no room for doubt about [their] meaning." *Gascho*, 400 F. App'x at 982. The third factor therefore weighs in favor of a knowing and voluntary release.

As to the fourth factor, the release provides that Plaintiff would receive severance benefits and medical coverage in consideration for signing the agreement and releasing all claims relating to her employment. Plaintiff does argue that such consideration was inadequate. *See id.* (finding the fourth factor favors a knowing and voluntary release where the plaintiff "does not argue that this consideration was unfair or otherwise a disproportionate exchange of value and indeed nowhere challenges the fairness of the benefits."); *see also Jamil v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 24-1481, 2025 WL 398546, at *4 (6th Cir. Feb. 4, 2025) (same). Further, the loss of economic benefits "is an accepted part of the bargaining process," and "[a] contrary view . . . would invalidate most, if not all, releases of claims in agreements conferring severance benefits on employees." *Gascho*, 400 F. App'x at 983 (citation modified). Consequently, the fourth factor weighs in favor of a knowing and voluntary release.

As to the fifth factor, Plaintiff argues that the totality of the circumstances demonstrate that she did not knowingly and voluntarily sign the release. This factor "allows claimants to invoke other considerations," such as "fraud, duress, or mutual mistake." *Id.* at 982; *Jamil*, 2025 WL 398546, at *4 (quoting *Shaheen v. B.F. Goodrich Co.*, 873 F.2d 105, 107 (6th Cir. 1989)). Plaintiff, however, does not argue that fraud, duress, or mutual mistake occurred in the execution of the release. Instead, without any citation to the record, Plaintiff contends that "Defendant did not want Plaintiff to be fully aware of the implications of the release or feel the need to consult with an attorney before signing" because Defendant presented the release to Plaintiff on the day of her termination, referred to the release as a severance agreement, and did not inform Plaintiff about the terms of the release. Appellant's Br. at 15. But presenting the release on the day of Plaintiff's termination does not render the release invalid. Even if Plaintiff did not receive the release until her termination meeting, the release expressly allowed her forty-five days to consider whether to

sign the document and another seven days to revoke her signature. And even if Defendant referred to the release as a severance agreement, the front page of the release is clearly titled "TERMINATION GENERAL RELEASE," which should have been evident to Plaintiff. R. 17-2, Page ID #134. And Defendant did not have an obligation to inform Plaintiff about the terms in the agreement when presenting the agreement to Plaintiff. *See Hank*, 790 F. App'x at 699-700 (explaining that the employer "didn't need to" inform the employee that "he could take additional time or consult an attorney"). For it was Plaintiff's "obligation to seek counsel before she signed if she felt she did not understand the agreement." *Jamil*, 2025 WL 398546, at *3 (citation modified) (quoting *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 483 (6th Cir. 2014)).

Plaintiff additionally contends that she "was not aware of the nature of the agreement she signed" because she "signed the release shortly after receiving it" and "she felt pressured to sign quickly." Appellant's Br. 15. But Plaintiff does not indicate that Defendant took any action to pressure her into signing the release quickly and without awareness of the terms. Plaintiff's signature on the release actually "establishes a strong presumption" that she "know[s] its contents and [] assent[s] to them." *Thompson v. Lynch*, 788 F.3d 638, 647 (6th Cir. 2015) (quoting *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir. 2000)). And the release itself provides that by signing the agreement, Plaintiff "has carefully read and reviewed this Release," "fully understands all of its terms and conditions," and "fully understands that the Release is legally binding and that by signing it, [she] is giving up certain rights." R. 17-2, Page ID #139. Absent any indication otherwise, the fifth factor weighs in favor of a knowing and voluntary release. Resultingly, Plaintiff fails to raise a genuine issue that she knowingly and voluntarily signed the release.

Plaintiff also argues that the release constitutes an adhesive employment contract, is unconscionable, and violates public policy. But Plaintiff did not raise those arguments at the district court, and the district court did not address those arguments in its order. By not raising those arguments at the district court, Plaintiff forfeited those arguments.[4] *See Deters v. Kentucky Bar Ass'n*, 646 F. App'x 468, 476 (6th Cir. 2016) ("[A]ny argument not presented to the district court is deemed forfeited when raised for the first time on appeal."). We therefore decline to consider those arguments for the first time on appeal. *See, e.g., Franklin v. Franklin Cnty., Kentucky*, 115 F.4th 461, 479 (6th Cir. 2024).

Accordingly, Plaintiff fails to raise a genuine issue that the release is valid. Since there is no dispute that the release covers Plaintiff's claims against Defendant, the district court did not err in granting summary judgment to Defendant on the basis that the signed release bars Plaintiff's claims.

### III. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.

---

[4] Regarding Plaintiff's argument that the release constitutes an adhesive contract, Plaintiff indicates that her argument is based on the decision, *Rayford v. Am. House Roseville I, LLC*, No. 163989, 2025 WL 2177754 (Mich. July 31, 2025), which the Michigan Supreme Court issued approximately one month after the district court granted summary judgment to Defendant. Plaintiff argues that, under *Rayford*, the release is an adhesive employment contract that "demand[s] close judicial scrutiny for reasonableness." Appellant's Br. at 16 (citation modified). This argument was available to Plaintiff at the district court prior to *Rayford*, however, as the Michigan Supreme Court recognizes that "adhesion contracts, particularly in cases involving employment, have a long history in our state of requiring a reasonableness review." *Rayford*, 2025 WL 2177754, at *9.